UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANA LAPEEN,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

Case No. 14-13150

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
MONA K. MAJZOUB

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [28];
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [23]**

Plaintiff filed a complaint against the Commissioner of Social Security requesting that the Court review the final decision of the commissioner of Social Security on August 15, 2014. Plaintiff filed a Motion for Summary Judgment on March 1, 2016 [23] and Defendant filed a cross Motion for Summary Judgment on April 25, 2015 [28]. For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment [23] is **DENIED.**

### ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for Social Security Disability Insurance Benefits and Supplemental Security Income Disability Benefits on July 21, 2011, alleging that she became disabled on October 1, 2010. These claims were initially denied on

1

November 15, 2011 [7-2 at 13]. Plaintiff requested a hearing on December 6, 2011. *Id*. A hearing was held before Administrative Law Judge (ALJ) Regina Sobrino on October 4, 2012 at which Plaintiff testified and was represented by counsel. *Id*. In a decision dated April 5, 2013, the ALJ found that Plaintiff was disabled starting June 1, 2012 but was not disabled from October 1, 2010 through May 31, 2012. [7-2 at 23-24]. The Appeals Council declined to review the decision and thus the ALJ's decision became the Commissioner's final decision.

## FACTUAL BACKGROUND

1. **ADMINISTRATIVE RECORD**

    a. **TREATMENT HISTORY**

In October 2010, Plaintiff met with her primary care physician Dr. Perez-Pascual and complained about, *inter alia*, depression and anxiety and was referred for a psychiatric evaluation [7-7 at 111]. Later in October 2010, Plaintiff visited medical specialist Dr. Srinivas Mukkamalla, complaining of plugged up ears and vertigo [7-7 at 95]. In his notes, the doctor suggested that her vertigo could be related to migraines and recommended an MRI, which revealed some abnormalities that could be related to migraines and recommended an additional MRI in six months. *Id* at 103.

Additionally in October 2010, Plaintiff began visiting the Hillside Center for Behavioral Services. During intake, Plaintiff complained of depression, anxiety and panic attacks for the previous six years and reported her IBS during intake [7-7 at 42]. The intake interviewer, Ms. Cheryl Hill, LMSW, assessed that Plaintiff appeared at intake with a flat affect, depressed mood and a guarded attitude, but without other cognitive abnormalities, and assessed "moderate" emotional impairment and other "mild" impairments [7-7 at 44-45].

In November 2010, Plaintiff visited psychiatrist Dr. Furhut Mansour. Plaintiff complained of anxiety and panic attacks and felt like she could not return to work because of these symptoms [7-7 at 75]. Plaintiff returned to Dr. Mansour a week later and reported feeling better but still on the verge of panic and the doctor noted that she appeared anxious but was calmer and less agitated [7-7 at 81]. Plaintiff had another appointment with Dr. Mansour a week later and reported that her mental difficulties were worsening and Plaintiff was referred to an intensive outpatient program [7-7 at 83-84].

From later November 2010 through mid-December 2010 Plaintiff attended outpatient treatment at Hillside, where she attended group therapy daily and visited with psychiatrist Dr. Purna Surapaneni [7-7 at 85-88]. At discharge from the program, Plaintiff was assessed with a Global Assessment of

3

Functioning (GAF) score of 60, indicating overall moderate improvement from the onset of her treatment at Hillside [7-7 at 73].[1]

Plaintiff saw Dr. Mansour in late December 2010, and the doctor noted improvement in her mood and overall condition following the treatment at Hillside [7-7 at 88]. Plaintiff reported that the treatment at Hillside and the change in medication were very helpful for her and noticed a decrease in panic attacks while her anxiety remained, but was considering going back to work. *Id*.

In May 2011, the Hillside Center discontinued therapy for Plaintiff because she was losing her insurance [7-7 at 48]. Dr. Jyothi Nutakki referred Plaintiff to a low-income clinic and assessed a final diagnosis of panic disorder with agoraphobia, a GAF score of 56 (indicating moderate impairment) and noted that Plaintiff had "achieved most goals" and had moderate improvement. *Id*.

Plaintiff returned to Hillside Center in March 2012. During the initial intake with Kimberly Birrell, LMSW, Plaintiff complained of eight years of severe panic attacks, irritable bowel syndrome (IBS), migraines, dizziness, chronic fatigue and depression [7-7 at 186]. Plaintiff was assessed with "moderate"

---

[1] A GAF score is a number between 1 and 100 that measures a clinician's judgment of the individual's overall level of functioning. Diagnostic and Statistical Manuel of Mental Disorders (4th ed., text rev. 2000) (DSM-IV). A score between 61 and 70 indicates "mild" symptoms or limitations. *Id* at 34. A score between 51 and 60 indicates "moderate" symptoms or limitations. *Id.*

4

impairments and given a GAF score of 51, indicating overall moderate impairment [7-7 at 189]. During a meeting with Ms. Birrell in April 2012, Plaintiff was assessed as being depressed and anxious but also engaged, attentive and participative as they discussed therapy plans [7-7 at 190]. During a May 2012 visit, Ms. Birrell stated that Plaintiff was "engaged, depressed, anxious, participative [and] motivated." [7-7 at 191]. On June 11, 2012, Ms. Birrell stated that Plaintiff was "anxious, depressed, leery, engaged, attentive [and] motivated." [7-7 at 192].

In late June 2012, Plaintiff visited Dr. Mansour (now Janesen), because she had regained insurance and was looking to get back on medication [7-7 at 197]. At this appointment, Plaintiff complained of continuing anxiety and panic attacks. *Id*. Plaintiff was assessed with a GAF score of 50, signaling serious impairment. *Id* at 199.

### b. STATE MEDICAL OPINIONS

In October 2011, Plaintiff was seen by state medical examiner Dr. R. Scott Lazzara who concluded that Plaintiff had a "mild" impairment overall, and that Plaintiff could lift less than 40 pounds and push and pull less than 40 pounds with no other exertional limitations. [7-7 at 121]. Also in October 2011, Plaintiff underwent a state psychological exam by Dr. Matthew Dickson who noted

5

Plaintiff's long-running symptoms of anxiety, depression and night terrors [7-7 at 124]. The doctor noted that Plaintiff had an interest in shopping, going to the movies, and to restaurants, but had to recently walk out of a restaurant because of her anxiety. *Id* at 125. The doctor also noted that Plaintiff was able to complete basic household chores, but did depend on her mother for assistance with chores because she could get overwhelmed. *Id*. The doctor further noted that Plaintiff drove to the appointment alone and assessed Plaintiff with a GAF of 53, indicating moderate impairment. The doctor concluded that:

> [Plaintiff's] mental abilities to understand, attend to, remember, and carry out instructions are not overtly impaired. [Plaintiff's] abilities to respond appropriately to co-workers and supervision and to adapt to change and stress in the workplace are moderately impaired.

*Id* at 126. In an October 2011 state psychological review, Dr. Jerry Csokasy determined that Plaintiff had a mental residual functional capacity that made it difficult for her to complete complex tasks on a sustained basis, but that she could do simple and routine tasks on a sustained basis [7-3 at 13-14]. In a January 2013 consultative examination with Dr. Harold Sommerschield, the doctor assessed the Plaintiff with a GAF of 45 with an uncertain and possibly poor prognosis [7-7 at 218].

1. **PLAINTIFF'S TESTIMONY AT THE HEARING**

At the hearing held on October 4, 2012, Plaintiff was represented by counsel. The ALJ asked Plaintiff what made her stop working and kept her from continuing to work. Plaintiff answered that anxiety, depression, migraines, IBS and vertigo all prevented her from working. Plaintiff further testified that she could only stand for around twenty minutes before having to sit down, and only walk for about fifteen minutes, if she is accompanied by someone, and experiences pain in her knees when she bends down. Plaintiff also testified that she stopped cooking, cleaning, laundry and other household chores in October 2010 and relies on her mother for assistance. Plaintiff stated that her social anxiety has prevented her from going to the store recently, and from visiting friends or engaging in social activities. Plaintiff also testified that, as a result of panic attacks, she is unable to drive anymore or be around crowds of people.

2. **VOCATIONAL EXPERT'S (VE) TESTIMONY AT THE HEARING**

Following the testimony of Plaintiff, the VE testified that Plaintiff's former work would be classified as semi-skilled light work, and that Plaintiff would be unable to perform that type of work. [7-2 at 51-52]. The VE considered the RFC adopted by the ALJ, which restricted Plaintiff to light work and excluded ladder climbing, driving as a work duty, being close to hazards or vibrations, and with

7

limited stair climbing, balancing, stooping and crouching to only occasional times. *Id* at 51. Additionally, the ALJ requested the VE to limit further the type of jobs to low stress work that included: no fast paced activity, no production quotas and no assembly line work, involved minimal changes in the work setting, and had no requirement to interact with the public. *Id* at 52. The VE further testified that Plaintiff, under these restrictions, could work as an inspector or sorter, and that these types of jobs would require her to work eight hours a day, five days a week, and not miss more than one to two days of work per month. *Id*.

### OTHER ADMINISTRATIVE EVIDENCE

On September 6, 2011, Plaintiff filed out a function report for the Social Security Administration.

### 3. ALJ'S FINDINGS

When assessing claims of disability, a five-step process is employed:

> First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.
>
> Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."
>
> Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.

> Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.
>
> For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted); *see also* 20 C.F.R. §§ 404.1520, 416.920.

Following the application of the five-step process, the ALJ found that Plaintiff was not disabled prior to June 1, 2012 but did become disabled on that date. [7-2 at 24]. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. [7-2 at 15]. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "anxiety-related disorder, affective disorder, migraines, and history of irritable bowel syndrome." *Id*. The ALJ found at step three that Plaintiff's severe impairments did not "meet or medically equal the severity of one of the listed impairments in 20 CFR 404.1520(c) and 416.920(c)." *Id*.

The ALJ found that prior to June 1, 2012 Plaintiff had the residual functional capacity (RFC) to perform light work with exceptions, while since June 1, 2012 she has had the RFC to perform light work with exceptions and, as a result of her impairments, would be likely to be absent from work at least two days per month, on an unpredictable basis. [7-2 at 17, 21]. With this assessment of Plaintiff's RFC,

the ALJ found at step four that since October 1, 2010, Plaintiff has been unable to perform any past relevant work. Finally, at step five, the ALJ found that prior to June 1, 2012, there were jobs that "existed in significant numbers in the national economy that the claimant could have performed" and that beginning on June 1, 2012 there were no jobs that existed in significant numbers that Plaintiff could perform. [7-2 at 23-24].

## STANDARD OF REVIEW

Judicial review of a decision by an Administrative Law Judge ("ALJ") is limited to determining whether the factual findings are supported by substantial evidence, and whether the ALJ employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ's factual findings "are conclusive if supported by substantial evidence." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 243 (6th Cir. 1987). "Substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard "does not permit a selective reading of the record," as the reviewing court's assessment of the evidence supporting the ALJ's findings "must take into

account whatever in the record fairly detracts from its weight." *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984).

## ANALYSIS

Plaintiff argues that the ALJ erred because the RFC finding before June 1, 2012 was not supported by substantial evidence, alleging specifically that the ALJ merely summarized Plaintiff's testimony and other statements regarding Plaintiff's limitations, and gave no basis for finding that Plaintiff's testimony was not credible as to her limitations before June 1, 2012. Additionally, it is alleged that the ALJ failed to include any limitations from Plaintiff's migraine headaches or IBS in the RFC finding for any time prior to June 2012.

### 1. ALJ'S CREDIBILITY ANALYSIS

#### a. ALJ PROPERLY EXPLAINED CREDIBILITY ANALYSIS

Plaintiff alleges that the ALJ failed to provide a basis for questioning the credibility of Plaintiff's statements concerning the severity of her mental impairments prior to June 1, 2012, and "failed to show how actual evidence from treating medical sources support her evaluation of Plaintiff's RFC before June 2012." [23 at 10].

When assessing Plaintiff's credibility concerning Plaintiff's ability to perform work prior to June 1, 2012, the ALJ examined the totality of the medical

evidence in the hearing decision, citing many facts from the medical record that would subject Plaintiff's credibility to question. The ALJ cited evidence from Plaintiff's treating psychiatrist to document improvement in Plaintiff's mental state from November 2010, when Plaintiff was tearful and diagnosed with a GAF that indicated serious symptoms, while in December 2010, the same psychiatrist met with Plaintiff after she underwent intensive outpatient treatment and observed her reported improvement, including the fact that she was considering going back to work, giving her a GAF of 60, 10 points higher than a month before. [7-2 at 18-19]. Additionally, the ALJ considered the evidence from the state medical exams, which in October 2011 found Plaintiff's physical impairments to be mild with only moderate limitations from the psychological exam.

      The ALJ considered that, per Plaintiff's treatment records, while there were days of difficulty, before June 1, 2012 Plaintiff was caring for her children and performing basic household chores. Taken together, all of this information amounts to substantial evidence supporting rejection of Plaintiff's credibility concerning her disability claim before June 1, 2012. The record showed improvement prior to June 1, 2012, and consisted of only moderate impairments, which were taken into account in the RFC. Moreover, the ALJ fully explained the basis for the opinion concerning Plaintiff's credibility by referencing the full

medical record in detail, and by assigning appropriate weight to non-treating medical opinions, only giving them "some weight," as opposed to the information provided by Plaintiff's treating physicians which was given more weight in the analysis. [7-2 at 19]. Therefore, there is no error in the ALJ's credibility analysis.

### b. ALJ ADEQUATELY CONSIDERED THE CREDIBILITY OF PLAINTIFF'S MIGRAINES

Plaintiff complains in her Motion for Summary Judgment that the ALJ "gave no consideration to [the migraine's] effect on her functioning." [23 at 7]. However, the hearing decision shows that the ALJ expressly discussed and considered the medical evidence, including Plaintiff's MRI and the examination by Dr. Lazzara, who considered them a "mild" impairment based on Plaintiff's description, which mirrored her testimony at the hearing. Given this evidence, the ALJ concluded that Plaintiff had migraines, including them as a severe condition that Plaintiff suffered from at step two of the analysis [7-2 at 15]. This severe condition was expressly considered in the RFC limitations, and caused Plaintiff to be limited to "simple, routine tasks." [7-2 at 17-21]. Thus, Plaintiff's migraines were in fact considered in the ALJ's analysis, and Plaintiff has not shown in her Motion for Summary Judgment that further RFC limitations are necessary during the time period at issue. Accordingly, the Court does not consider that the ALJ lacked substantial

evidence to support the finding concerning the limitations caused by Plaintiff's migraines prior to June 1, 2012 and there is no error.

### c. ALJ ADEQUATELY CONSIDERED THE CREDIBILITY OF PLAINTIFF'S IBS

Plaintiff argues that there is no basis to conclude that her IBS affected her more or less severely during any specific time period after October 2010, and alleges that the ALJ did not provide a basis to question her testimony concerning the effects of the IBS on her ability to work. Therefore, Plaintiff contends that the ALJ's failure to include any limitations from IBS in her RFC finding shows that the decision was not based on substantial evidence.

The ALJ expressly considered all the available medical evidence along with Plaintiff's testimony in the decision, explicitly noting Plaintiff's long history of IBS and her reported symptoms [7-2 at 18]. However, the ALJ also concluded that the Plaintiff's medical record concerning her IBS did not meet or equal the listing requirements for IBS or any other digestive system listing [7-2 at 16].

Additionally, the medical evidence contained in the record does not support a finding that the ALJ lacked substantial evidence to find Plaintiff not fully credible regarding her IBS symptoms prior to June 1, 2012 since Plaintiff has been on medication to treat her IBS for over 20 years. Thus, absent objective medical evidence concerning the severity of Plaintiff's IBS symptoms, there is substantial

14

evidence supporting the ALJ's finding that the IBS was not disabling, considering the steady treatment she received for over twenty years, significantly predating her disability application.

Plaintiff further asserts that the ALJ lacked evidence that supported a finding that the IBS worsened after June 1, 2012. This contention misstates the ALJ's hearing decision. The finding of disability was premised on the increasing severity in Plaintiff's psychological symptoms, not her physical symptoms. The severity or non-severity of Plaintiff's IBS was not relied upon in the finding of disability. Rather, the fact that Plaintiff's psychological limitations and symptoms would require her to take at least two days off a month was the factor that supported a finding of disability after June 1, 2012. Therefore, it was not error when no reference to evidence showing worsening of the IBS was included in the administrative decision, since the ALJ's hearing report never indicated that it in fact had worsened, or that it affected her disability in any way. [7-2 at 21-22; 24].

### d. ALJ PROPERLY CONSIDERED PLAINTIFF'S DAILY ACTIVITIES

Plaintiff argues that the ALJ did not properly represent her daily activities when calculating the RFC, because it was never actually stated that she "enjoy[ed]" shopping, going to the movies, [and] restaurants" [23 at 6]. However, Plaintiff did in fact testify that she enjoyed these things, and had an interest in

them, only indicating that her anxiety meant that she could not enjoy them alone. [7-7 at 125]. Moreover, at this examination, Plaintiff reported other activities that she participated in, including shopping with her mother, completing basic household chores, and preparing food. *Id*. The doctor at this evaluation also noted that she had driven herself alone to the appointment. *Id.* Given the medical record, the ALJ assessed these as mild restrictions to the activities of daily living that resulted in an RFC limited to simple routine work. [7-2 at 16-17]. The Court declines to find that there is not substantial evidence to support the ALJ's findings concerning the activity level of the Plaintiff and how it affected the RFC and disability finding prior to June 2012.

### e. ALJ PROPERLY CONSIDERED DR. SOMMERSCHIELD'S PSYCHOLOGICAL REPORT

Plaintiff argues that Dr. Sommerschield's opinion of January 2013, which was provided to the ALJ and referenced in the finding of disability post June 1, 2012, demonstrates that the findings concerning Plaintiff's credibility before June 2012 are contrary to the evidence, since the doctor observed that Plaintiff reported extreme anxiety going back many years. [23 at 7; 7-7 at 213]. However, this examination was undertaken several months *after* the end of June 2012. Moreover, these statements are part of Plaintiff's recorded history derived from her own testimony, rather than based on prior medical records.

In contrast to this testimonial information provided by Plaintiff, the ALJ had the notes of a treating physician during the time at issue, and there is substantial evidence from treating physicians to support the determination of credibility. It was completely reasonable for the ALJ to rely on that examination for the time period to which it was applicable, i.e. post June 2012, and not assign significant weight to it for a time period removed from the examination based only on testimony from Plaintiff, when there were treating physicians records and notes that were contemporaneous to the time at issue. Therefore, there is no error.

## 2. ALJ PROPERLY CONSIDERED PLAINTIFF'S MENTAL IMPAIRMENTS UNDER LISTING 12.00 DURING THE PERIOD AT ISSUE

Plaintiff argues that the ALJ's determination of impairments of social functioning and concentration, persistence or pace prior to June 2012 was based "solely on [the ALJ's] version of accounts of Plaintiff's statements from two examiners who saw Plaintiff on only one occasion each, within a week of each other." [23 at 5]. However, there is no rationale offered by Plaintiff as to why the ALJ could not rely on these reports, and on statements contained in these reports made by Plaintiff herself, that describe activities she was performing during the time at issue.

Additionally, it is inaccurate to state that the ALJ relied *only* on these two reports, since the section of the report that explicates how the ALJ arrived at the

17

RFC for the time in question includes a detailed report on all the contemporaneous medical reports, including those from Plaintiff's treating physicians [7-2 at 17, 21]. When citing to the reports of Dr. Lazzara and Dr. Dickson, on which the Plaintiff contends the ALJ based the RFC determination, it was specifically stated that their reports were "consistent with the medical evidence of record as a whole prior to the established onset date of disability" [7-2 at 20]. Therefore it is inaccurate to argue that the ALJ failed to consider the evidence as a whole and there is substantial evidence, based on the medical record in its totality, that the ALJ gave appropriate weight to the considerations of Dr. Lazzara and Dr. Dickson.

Accordingly,

**IT IS ORDERED that** Plaintiff's Motion for Summary Judgment [23] is **DENIED** and Defendant's Motion for Summary Judgment [28] is **GRANTED.**

**SO ORDERED**.

Dated: June 3, 2016

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge